_____FILED    _____ENTERED
_____LOGGED    _____RECEIVED

DEC 0 3 2008

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                                    DEPUT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

RAUL CASTILLO RAMOS,                *
                                    *        Civil No.  AW-07-2982
        v.                          *        Crim No. AW-04-0293
                                    *
                                    *
UNITED STATES OF AMERICA.           ******

## MEMORANDUM OPINION

## I

One September 8, 2004 Petitioner/ Defendant, Raul Castillo Ramos, was indicted by a federal grand jury of six counts of distributing cocaine base (crack) and two counts of using and carrying a firearm during and in relation to a drug trafficking offense. Following a jury trial on November 18, 2004, Petitioner was convicted of all eight counts. Petitioner/Defendant was sentenced on February 2, 2005 for a total of 40 years as follows: 5 years each on drug counts one, three, five, seven and eight; 10 years on count four; to be served as concurrent sentences; 5 years on the first gun count (count two); and 25 years on the second gun count (count six), the sentences on counts two and six to be served consecutively to the sentences on the six counts previously mentioned.  Each of these eight sentences was the minimum required by the statutes.   Petitioner/Defendant appealed his conviction and sentence.  In a published opinion issued on September 5, 2006 *United States v. Raul Castillo Ramos*, 462 F.3d 329 (4th Cir. 2006), the United States Court of Appeals for the Fourth Circuit affirmed the conviction and sentence. Subsequent thereto, on November 27, 2006, The Supreme Court of the United States denied Petitioner/ Defendant's *writ of certiorari*.  Presently before the Court is a timely Motion to Vacate, Set Aside and Correct Sentence filed by the Petitioner/Defendant, for relief pursuant to 18 U.S.C. § 2255.

## II

The evidence adduced at trial indicated that between the period of April of 2003 and February of 2004, Special Agent Richard Zayas of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("AFT') was involved in an undercover investigation of Petitioner in connection with narcotics and firearms in the Hyattsville area of Prince George's County, Maryland.  While working undercover, Special Agent Zayas utilized a government informant who [through another friend] knew and was aware that Petitioner provided and sold drugs and guns.  Plans were made for the informant to introduce Special Agent Zayas to Petitioner.  The initial meeting took place on April 7, 2003 at a gas station located at the intersection of Riggs Road and East West Highway in Hyattsville, Maryland.  During this initial meeting, the informant joined the Petitioner in Petitioner's car and together the two of them drove a short distance away to an apartment complex where Petitioner exited the car, entered an apartment, returned to the car and then drove back to the gas station where Special Agent Zayas had remained.  Special Agent Zayas was directed to follow them to a recreational park about a quarter of a mile away.  At that point the informant returned to Special Agent Zayas's car and asked for $1500 to purchase 31 grams of crack and a Davis Industries .380 caliber firearm with an obliterated serial number.   The purchases were made by the informant who provided the items to Special Agent Zayas for later processing and identification.

Subsequent thereto, in an around the same general area in Hyattsville, Maryland, Petitioner sold additional contraband to Special Agent Zayas.  On April 10, 2003 Petitioner sold Special Agent Zayas  24.4 grams of crack for $1100.   On May 5th, 2003 Petitioner sold Special Agent Zayas 62 grams of crack for $2400.  During this meeting, Special Agent Zayas inquired of Petitioner about purchasing a gun.  Petitioner advised that Petitioner would not sell his gun but would get Special

Agent Zayas a gun while Petitioner was in New York.   On August 2, 2003 in return for $1900 dollars handed to Petitioner by the agent, Petitioner sold  Special Agent Zayas both 31 grams of crack and a gun (a .357 caliber revolver) which had been requested during the purchase of May 5, 2003. The purchases continued with a sale on August 26, 2003 where Petitioner sold Special Agent Zayas 31 grams of crack for $1200. Finally, a purchase by Special Agent Zayas was scheduled for February 11, 2004 which was the date on which Petitioner was arrested.  All of these sales and distributions served as the basis for the eight counts set forth in the indictment.

<u>**III**</u>

In his instant Motion, Petitioner presents essentially six grounds ( a couple of which overlap) that he contends entitle him to relief.  The Court will state these claims as lifted from Petitioner's memorandum in support of his Motion.  **First**, Petitioner asserts that he was denied his right to the effective assistance of counsel when his counsel failed to object and defend on the basis of a pistol that was planted by the police informant and the outrageous police and prosecutorial misconduct that accompanied his conviction relating to this firearm under 18 U.S.C § 924 © .  **Second**, Petitioner claims that he was denied his right to the effective assistance of counsel when counsel failed to defend a firearms charge relating to a .380 pistol on the basis that the pistol is nonfunctional.  **Third**, Petitioner argues that he was deprived of his right to the effective assistance of counsel, when his counsel failed to object and defend on the basis that the firearms were not used and carried during and "in relation to" the drug offenses.

**Fourth**, Petitioner asserts that he was deprived of the right to the effective assistance of counsel when his counsel failed to object and defend on the basis of the outrageous police conduct during which the police purchased crack cocaine on five occasions during a sting operation

3

concentrated solely on Petitioner. **Fifth**, Petitioner claims that his sentence is in excess of the sentence allowed by law based upon the amendment to the offense level for crack cocaine which will be made retroactive and applicable to this proceeding during the pendency thereof. **Six** and lastly, Petitioner claims that he was deprived of the effective assistance of counsel when his counsel failed to object to Petitioner being tried before a jury in an orange jumpsuit.

IV

Preliminarily, and with respect to the claims by Petitioner that his counsel was ineffective, the Court reviews his allegations under the well established standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and prejudice. In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as a counsel within the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense. Id.

In this case, Petitioner **first** argues that his counsel's performance was deficient in not pressing arguments that the Davis Industries .380 pistol was planted by the informant (who went by the code name, "smokey"), that special agents Richard Zayas and Kathleen Dowd both  perjured themselves in their testimony, that the conduct of the police was outrageous and that because the Government prosecutors had reason to know of the perjury and of the planting of the gun by the informant they committed prosecutorial misconduct.  Beyond Petitioner's self-serving, belated and personal opinion that the testimony was perjured and that the gun was planted by the informant, the Court does not believe that there was any direct or indirect evidence of the gun being planted. Special Agent Zayas testified that he searched the informant before the transaction and the informant had no weapon. While there was no recording of what took place at the apartment complex where Petitioner and the

4

informant traveled, there was evidence that when the informant and the Petitioner returned, the informant requested and was provided $1500 by the agent to purchase both 31 grams of crack for $1050 and $450 for the firearm. Both items were provided to agent. Petitioner's opinion of the possibility and probability that the gun was planted by the informant and that there was perjured testimony simply has no support in the record. Neither can the Court find any evidence of police outrageousness or prosecutorial misconduct. Counsel's decision to not press arguments for which there were no factual or legal support beyond Petitioner's opinion does not amount to a performance deficiency.

Petitioner **also** claims that his counsel was deficient in not pressing the argument that the .380 pistol was nonfunctional. Petitioner's argument seems to be that because the gun had a broken firing pin, lacked a clip, was old, abused, had an obliterated serial number, and was an off brand model–the gun likely was nonfunctional. Petitioner has given his views as to the description of the gun, however, the actual evidence before the jury was that immediately after obtaining the $1500 from Special Agent Zayas for the purchases on April 7, 2003, the informant provided Petitioner with the money, received the two items from Petitioner and the informant then provided the agent with the drugs and  a Davis Industries .380 caliber pistol (purchased for $450) with an obliterated serial number. AFT special agent Kathleen Dowd testified that the pistol in question was test-fired in her presence and that while the gun did not fire initially, it needed to be manipulated by the firearms expert . Agent Dowd further testified that once the original firing pin in the firearm [which had been broken] was replaced with another one, the gun fired. (See JA 113-114). The Court gave instruction #45 to the jury which provided the definition of a firearm: a" firearm" is a weapon which will or is, designed to or may be readily converted to expel a projectile by action of an explosive. In light of the testimony of agent Dowd who was present when the weapon fired together with the instructions

5

given to the jury with respect to the definition of a firearm, the Court cannot find any performance defect in counsel's decision not to press an argument which appears inimical to direct evidence that the weapon in fact fired and met the definition of a firearm.

Petitioner **next** posits that he was denied the effective assistance of counsel because his counsel failed to press the argument that the firearms in question were not used and carried during and in relation to the drug offenses. In addition to defining a firearm, additional instructive guidance to the jury was provided by the Court in instruction #45 which stated, *inter alia*: "In order to prove that the defendant carried the firearm [during and in relation to the commission of the crimes charged in counts one and five], the government must prove beyond a reasonable doubt that the defendant had the weapon within his control in such a way that it furthered the commission of the drug trafficking crime or was an integral part of the commission of the crime....If you find that the defendant had dominion and control over the place where the firearm was located, and had the power and intention to exercise control over the firearm in such a way that it furthered the commission of the crime of violence, you may find that the government has proven that the defendant carried the weapon." These instructions provided guidance for the jury to assess whether the guns in question encouraged the drug sales, or possibly were used to protect the drug business, or had some purpose or effect of facilitating the drug transactions. The Court cannot find that it was a deficient performance for counsel not to have specifically pressed this issue apart from counsel's overall and general argument that the Government failed to prove the case beyond a reasonable doubt against Petitioner. This claims must be rejected.

Petitioner's **fourth** ground in support of his Motion is another Sixth Amendment claim that he was denied the effective assistance of counsel. Petitioner contends that counsel was derelict in

6

failing to press the argument of outrageous police conduct where the police purchased crack on five separate occasions during the investigation of Petitioner. Petitioner argues that the police should have ended their operation after the first transaction which would have restricted the drug amount to 31 grams and, thereby, reducing Petitioner's sentencing exposure. This, Petitioner asserts, was fundamentally unfair, was shocking to the sense of justice, and was violative of due process. According to Petitioner, for counsel to not have obtained a pre-trial ruling challenging these multiple purchases, such failure constituted ineffective assistance of counsel. The essential problem with this argument, of course, is that Petitioner presented this very claim in the direct appeal of his conviction, and as Petitioner is aware, this claim was rejected by the Fourth Circuit. Citing, *United States v, Jones,* 18 F.3d 1145, 1155 (4th Cir.1994), the United States Court of Appeals for the Fourth Circuit stated: "We find it not outrageous for the government to continue to purchase narcotics from willing sellers even after a level of narcotics relevant for sentencing purposes has been sold." Likewise, the Fourth Circuit proceeded to similarly hold [in the Ramos appeal] " That the record in this case does not even suggest that it was outrageous for the government to continue to purchase narcotics from Ramos even after a level of narcotics relevant for sentencing purposes had been sold." *See, United States v. Ramos* 462 F.3d 329 at 335. Petitioner's counsel performance, therefore, was not deficient in failing to press an issue contrary to settled law, and rejected on appeal.

In his **fifth** claim, Petitioner argues that his sentence exceeds the instructions and teachings of Amendment 706 (crack-cocaine) to the Federal Sentencing Guidelines. Petitioner contends that having been sentenced for crack transactions, he is now entitled to retroactive application of the Amendment and thereby seeks a reduction of his sentence. The Court agrees with the Government and concludes that Petitioner is not entitled to any relief under Amendment 706 of the Federal

7

Sentencing Guidelines. Petitioner's Sentencing was not based upon the improper discrepancy between crack and cocaine sentences. On the contrary, all of Petitioner's sentences were driven by the statutory minimum policies. Petitioner was convicted and sentenced on 5 counts (counts one, three, five, seven, and eight) for distribution of five grams or more of cocaine base (crack) under 21 U.S.C §§ 841 (a)(1) and (b)(1)(B)(iii) to the statutory minimum of 5 years incarceration. Petitioner was also convicted of count four for distribution of 50 grams or more of cocaine base (crack) under 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(iii) and was sentenced to the statutory minimum of 10 years incarceration. The Court ordered that all 6 of these distribution counts to be served concurrently. Petitioner was also convicted of the two § 924© counts. As a result, the Court sentenced Petitioner to 5 years incarceration for count two, and 25 years incarceration for count six and to be served consecutive to the sentences for all other counts which is mandated by law. The Court's imposition of a total of 40 years was the minimum sentence required by statute. The Court knows of no authority to alter, vacate or otherwise undermine the required statutory minimum sentences imposed in this case. Accordingly, Petitioner is not entitled to any relief under Amendment 706.

**Finally**, Petitioner claims a Six Amendment violation of the effective assistance of counsel on the basis that his counsel failed to object to Petitioner being tried before a jury in an orange jumpsuit. A review of the Joint Appendix quickly disposes of this claim. The very first words out of mouth of Petitioner's counsel at the inception of the trial is as follows: "Good morning, Your Honor ( counsel states his name) on behalf of Mr. Castillo Ramos, who is here in the courtroom and dressed in his jumpsuit. He's declined to wear his street clothes, Your Honor." The record reflects no response, no dispute from Petitioner as to what his counsel represented, no complaint, no inquiry, not a word–nothing. The court construes this lack of response to mean that in fact Petitioner declined, refused, or did not want to appear in any attire different from his jumpsuit. While an

8

accused in a criminal case certainly has the right to request that he/she appear before a jury dressed in personal or street clothes, the Court cannot order one who has declined such right to change clothes.  In the absence of anything in the record even suggesting that Petitioner disagreed with his counsel's opening statement or otherwise wanted a change of clothes, the Court does not believe that his counsel's conduct with respect to the jumpsuit issue constitutes any cognizable deficiency.  This claim, therefore, is bereft of merit.                    **V**

In the sum, the Court has reviewed the current pleadings and the entire files relative to the present motion as well as underlying criminal case.  The Court does not believe on this record that Petitioner has made any showing that counsel's performance was legally deficient nor is there any evidence of prejudice pursuant to the *Strickland* standard.  Hence, Petitioner's ineffective assistance of counsel claims and his other contentions  must fail.  In short, the Court finds that Petitioner has not demonstrated a legal and cognizable basis for relief.  Accordingly, the Petitioner's Motion pursuant to § 2255 is DENIED.  A separate Order will be issued.

Date: December 2, 2008

Alexander Williams, Jr.
United States District Judge