IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No. **PJM 04-293** |
| | * |
| **RAUL CASTILLO RAMOS,** | * |
| | * |
| Defendant. | * |

## MEMORANDUM OPINION

Raul Castillo Ramos is currently serving a statutorily mandated prison term of *40 years*—the minimum he could have received when sentenced in 2005. Today, that sentence would be *15 years*. Based on this glaring disparity, Ramos moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, his Motion is **GRANTED**.

### I.

On September 8, 2004, Ramos was indicted on six counts of distributing cocaine base (crack) and two counts of using and carrying a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c). Ramos chose to put the Government to its proof and pleaded not guilty.

At trial, the Government established that an undercover agent purchased a total of 166 grams of crack from Ramos. During those transactions, the agent also purchased two firearms, procured and sold by Ramos. After a three-day trial, Ramos was convicted of all eight counts.

In early 2005, Ramos proceeded to sentencing. Under the regime in place at the time, Ramos was subject to multiple mandatory minimum prison terms:

| **Charge** | **Mandatory Minimum** |
|---|---|
| Counts I, III, V & VII – Crack Distribution (5 grams or more) | *5 years* per count, concurrently |

1

| | |
|---|---|
| Count IV – Crack Distribution (50 grams or more) | *10 years*, concurrent with all drug counts |
| Counts II & VI – Carrying Firearm In Relation to Drug Trafficking Crime | *5 and 25 years*, consecutive to all counts |

As a result of these penalties, Ramos's lowest possible sentence was 40 years—30 for the guns, 10 for the drugs. As if that were not enough, the Government also recommended a Guidelines sentence on the drug charges that would have increased the final sentence from 480 months to 548 months.

The Court declined to impose a sentence beyond the statutory minimum and downwardly varied from the Guidelines. Even so, the severity of the punishment did not go unnoticed. At Ramos's sentencing hearing, the Court remarked that, "as all of you know, my hands are pretty much tied in this case." Sentencing Tr. 19:9–10. Following a statement by Ramos's mother, the Court explained:

> On one hand, you understand the position of [Ramos's] mother. We understand that, that she's wondering whether 40 years is appropriate and just for someone who on this record has committed these offenses. But, on the other hand, Congress has the right and they have the duty to impose tough penalties. These are tough penalties for people for drug distribution. Drugs are a problem in America. There's no question about it. Drugs are a problem. And you wonder whether the penalties fit the crime. Who knows.

*Id.* at 19:10–18. As it turns out, the penalties did not fit the crime.

## II.

Congress subsequently amended the statutory penalties that drove Ramos's sentence. Most significantly, Congress eliminated the practice of "stacking" § 924(c) offenses, under which Ramos received concurrent terms of 5- and 25-years imprisonment. At the time, section 924(c) was interpreted as prescribing a 5-year mandatory minimum for a first conviction, and a consecutive 25-year term for any "subsequent" conviction—even if obtained in the same case, *i.e.*, the "stack." *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). Today, with the rejection

2

of that interpretation, Ramos would only receive two consecutive 5-year terms, totaling 10 years. Notwithstanding that change, Ramos is currently serving triple that amount because Congress did not make the § 924(c) amendment retroactive.

As with "stacking," Congress also saw it necessary to lower the statutory terms for crack distribution offenses. Under the Fair Sentencing Act of 2010, the only drug charge Ramos would have faced with a mandatory minimum was Count IV; it now carries a mandatory term of 5 years, as opposed to 10.

There is no dispute that the laws upon which Ramos was sentenced have changed dramatically. Even the Government acknowledges that:

> [Ramos]'s sentence would be significantly lower if imposed today. The original Count Four mandatory minimum would today be 5 years instead of 10, and the successive § 924(c) convictions would, under amendments to the First Step Act, impose a consecutive sentence of 10 years, rather than 40. [His] Guidelines, if based entirely on the amount of cocaine base [he] actually sold (approximately 166 grams), would be reduced to 26, instead of 34, and his Guidelines range would drop to 78-97 months.

Gov't Br. 7–8.

### III.

The expanded scope of relief under § 3582(c)(1)(A) in light of the First Step Act is well established. *See McCoy*, 981 F.3d at 284. To grant relief, two conditions must be met: (1) the movant must present extraordinary and compelling circumstances; and (2) relief must be consistent with the § 3553(a) factors. Here, both are satisfied.

#### A. Extraordinary & Compelling Circumstances

The Fourth Circuit has instructed that "courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise,'" including "stacked" charges under § 924(c). *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2020)). In response, the Government offers no good reason why a

3

different result should obtain as to Ramos. His "stacked" sentence triples what he would receive today, a circumstance that the Court judges to be sufficiently extraordinary and compelling. In a similar vein, Ramos's drug distribution charges would be shorter today. In fact, the only mandatory prison sentence he would face on those charges is a concurrent term of 5 years on Count IV, half of what he currently serves. *See supra* II.

Under *McCoy*, the Court has discretion to deem sentencing disparities, such as those presented here, as extraordinary and compelling justifications for relief. All the Government argues in opposition is that *McCoy* was wrongly decided. Even if true, as the Government well knows, the Court is bound by the Fourth Circuit's ruling, and *McCoy* clearly opens the door for such relief. While the Court appreciates the Government's concern that an expansive reading of *McCoy* could be used to "entertain a bottomless inventory of compassionate release motions," the fact remains that this is not one of those problematic cases. Gov't Br. 8.

Accordingly, Ramos has demonstrated extraordinary and compelling circumstances for relief under § 3582(c)(1)(A).

### B. The § 3553(a) Factors

The Court next considers whether relief is consistent with the factors under 18 U.S.C. § 3553(a). The Government contends that the § 3553(a) factors weigh against relief because Ramos's crimes involved guns and a significant quantity of crack. While those attributes are undoubtedly serious, and must be considered, they are not disqualifying.

The Court believes that the nature of Ramos's offenses is not so severe that he should be denied relief. He was not a drug kingpin. If anything, he appears to have been more of a bit player with connections to individuals who were in a position to supply large quantities of drugs. Nor was Ramos a sophisticated gun dealer. At the behest of a confidential informant and an undercover

agent, Ramos procured two firearms, one of which turned out to be inoperable. That is the extent of Ramos's conduct in this case. He is not alleged to have engaged in acts of violence or in threatening or menacing behavior. This stands in marked contrast to the defendants granted relief in *McCoy*, all of whom were convicted of robbery.

Ramos references numerous cases in which defendants have received far *shorter* sentences than his, despite participating in unquestionably more egregious conduct, including murder, attempted murder, and kidnapping. *See United States v. Whisonant*, No. ELH-17-0191 (D. Md.); *United States v. Brandon Bazemore*, No. CCB-16-0597 (D. Md.); *United States v. Plummer*, No. GLR-17-0223 (D. Md.); *United States v. Manuel Martinez-Aguilar*, No. JKB-17-0589 (D. Md.); *United States v. David Hunter*, No. JKB-16-0363 (D. Md.). These cases suggest that Ramos's term of incarceration is now difficult to reconcile with the goals of sentencing.

Ramos's criminal history also favors relief. Prior to his arrest, he was convicted of (1) malicious destruction of property valued less than $500, for which he received three years of probation, and (2) trespassing and possessing marijuana, for which he received one day of imprisonment and probation. These are not the hallmarks of a dangerous career criminal deserving of a 480-month sentence.

The Court also finds Ramos's behavior while incarcerated worthy of consideration. Based on the record before the Court, Ramos has not incurred a single disciplinary infraction. Moreover, the letters of support attached to his Motion bear out that he is dedicated to improving himself. His post-conviction conduct suggests that he will be deterred from future crime.

Were Ramos sentenced today, it appears that his Guidelines range, with all mandatory sentences included, would equal 198 to 217 months. His current sentence exceeds that *by at least 263 months*. A sentence just beyond the Guidelines range, at 240 months—or, half of his original

sentence—would more justly punish Ramos for his crimes while promoting respect for the law and deterring others.

Accordingly, the Court **GRANTS** Ramos's Motion and imposes a term of **240 months imprisonment**, reducing his sentence to 60 months on Count VI and leaving the remainder of his sentence intact.

The Court notes that the parties have referred to the availability of good-time credit, which may make Ramos immediately eligible for release. The Court leaves that determination to the Bureau of Prisons. Should Ramos be eligible, his release shall be **STAYED** for 14 days from the date of this Opinion, to allow for appropriate medical clearance, prompt pre-release review, the implementation of a release plan, and arrangements to ensure that any immigration detainer is properly addressed.

## CONCLUSION

For the foregoing reasons, Ramos's Motion to Reduce Sentence is **GRANTED**. The Court imposes a reduced sentence of 240 months of incarceration.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

March 4, 2021